UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEROME CEASAR ALVERTO,

      *Plaintiff*,

v.

MICHELLE HENDERLING, et al.,

      *Defendants*.

CASE NO. 18-CV-1380-BJR-BAT

ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING IN PART PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

Before the Court are Plaintiff's Objections (Doc. 8) to the Report and Recommendation ("R&R") (Doc. 7) of the Honorable Brian A. Tsuchida, United States Magistrate Judge, recommending that the Court dismiss Plaintiff's Complaint (Doc. 6) for failure to state a claim upon which relief may be granted. Also pending is Plaintiff's motion for leave to amend his complaint (Doc. 8 at 11). Having reviewed Plaintiff's Complaint, the R&R, Plaintiff's objections thereto, and all other relevant materials, the Court adopts the R&R. In addition, the Court grants Plaintiff's motion for leave to amend his Complaint consistent with this Order. The Court's reasoning follows:

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Jerome Alverto is an inmate house in the Special Offenders Unit at Monroe Correctional Complex ("MCC"), which is run by the Washington Department of Corrections ("DOC"). (*See* Compl., Doc. 6 at 1). Defendants Michelle Henderling, Stephen Ewing, Richard Semp, and Eric Jackson are DOC employees who work at MCC. (*See id.*).

According to Plaintiff's exhibits, on June 16, 2018, a Response and Movement Officer working in MCC's dining hall saw Plaintiff "talking with" Majed, another inmate, as the two were waiting to get their food. (*See* Compl. Ex. 2, Doc. 6-1 at 11). According to the Officer, Plaintiff verbally threatened Majed. (*Id.*). The Officer "separated the two and directed [Plaintiff] to step out of the dining hall." (*Id.*). Plaintiff did so; and, once in the hall, an MCC Sergeant spoke with Plaintiff and then "directed" the Officer to "search [Plaintiff] and place him in mechanical wrist restraints." (*Id.*). Plaintiff was then "escorted" to the segregation unit. (*Id.*).

Five days later, on June 21, 2018, Defendant Ewing held a hearing on the matter. (*See id.*). According to Ewing's subsequent report, there is video footage of the incident, but the "footage is such that drawing any definitive conclusions is difficult. It [is] clear [only] that there was some negative interaction [between Plaintiff and Majed] that required staff intervention." (*Id.*). At the hearing, Plaintiff was shown the video and asked whether he had "anything to say" about it. (*Id.*). Plaintiff responded that the "issue" with Majed had "been going on for about a week." (*Id.*). Specifically, Plaintiff said, "Majed ha[d] been coming at" him, and, on the day of the incident,

---

[1] Plaintiff's briefing, and his many attachments thereto, are, at times, difficult to understand. *See*, *e.g.*, Compl. ¶¶ 13, 17 (apparently referencing different grievance numbers for the same complaint and failing to attach the corresponding grievance(s)). In addition, some of the exhibits that Plaintiff attaches are illegible, having been scanned so many times that the background is nearly black. *See*, *e.g.*, Ex. 3, Doc. 6-1 at 13; Ex. 5, Doc. 6-1 at 19. Therefore, the Court has done its best to properly match Plaintiff's allegations with his supporting documents. In addition, the Court liberally construes Plaintiff's Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

"Majed started running his mouth. He told [Plaintiff] to hit him…[and] [Plaintiff] told [Majed] to 'get away[.]'" (*Id.*). Plaintiff further reported that he had done everything he could to keep Majed "from bullying" him; and, earlier in the week, Majed had sexually threatened Plaintiff. (*Id.*). Defendant Ewing, in turn, asked whether Plaintiff had "file[d] PREA," meaning, ostensibly, whether Plaintiff had filed a complaint under the Prison Rape Elimination Act, 42 U.S.C. § 15601 ("PREA"). (*See id.*). Plaintiff responded: "No[.]" (*Id.*). Defendant Ewing replied that Majed's threat to Plaintiff would be "reported to the shift Lt. upon conclusion of the hearing." (*Id.*). Despite Plaintiff's story and the inconclusive video, at the end of the hearing, Plaintiff was found guilty of having "threatened and attempted to intimidate another individual." (*Id.*). As punishment, Plaintiff was "sanction[ed]" to the six days he had just spent in segregation. (*See id.*).

Immediately following the hearing, Plaintiff asserts, Defendant Ewing "reported" to Defendant Semp Majed's sexual threat against Plaintiff. (*See* Compl. Ex. 1, Plaintiff Affidavit, Doc. 6-1 at 4). Defendant Semp apparently escorted Plaintiff back to general population. (*See id.*). Once on Plaintiff's tier, Plaintiff alleges that Semp loudly stated: "So, you said Majed tried to rape you … ." (*Id.*) According to Plaintiff, the other inmates on his tier laughed at Semp's comment. (*Id.*).

The next day, on June 22, 2018, Plaintiff "confront[ed]" Semp by filling out a "kite," a report to prison staff. (*See id.*). According to Plaintiff, Semp "failed to respond" to the kite. *Id.* "As a result of Semp's behavior," Plaintiff continues, he filed a "PREA complaint" against Semp. (*See id.*). As best the Court can tell, in this complaint, Plaintiff maintains that Semp divulged to Plaintiff's whole tier that Plaintiff had made a PREA complaint against Majed—information that Plaintiff maintains is confidential under the PREA. *Compare id. with* Doc. 6-1 at 15 and Doc. 6-1

3

at 18.² Defendant Semp divulged this information, Plaintiff maintained, because he was trying to "discourage" Plaintiff from following through on his PREA complaint against Majed. *See* Compl. ¶ 13.

A DOC Captain investigated Plaintiff's allegation that Majed had threatened to sexually assault him. (*See id.*; Compl. Ex. 4, Serious Infraction Report, Doc. 6-1 at 15). Defendant Jackson, MCC's Superintendent, "reviewed" the investigation. (Ex. 4, Doc. 6-1 at 15). According to Plaintiff, on August 1, 2018, an MCC employee notified him that his complaint against Majed had been determined "unfounded." (Pl's. Aff., Doc. 6-1 at 5).

Further, on or about August 2, 2018, Defendant Henderling, a PREA Compliance Specialist, informed Plaintiff that "[o]n July 31, 2018 [she] was given pre-approval by [Defendant] Jackson to infract" Plaintiff for providing "false or misleading information during any stage of an investigation of sexual misconduct[.]" (Ex. 4, Doc. 6-1 at 15). According to Defendant Henderling's report, Plaintiff had falsely alleged "that a staff member," ostensibly Defendant Semp, "had discouraged [Plaintiff] from filing a PREA complaint." (*See* Doc. 6-1 at 15). For having made this false allegation, Plaintiff was "infract[ed]" and sentenced to (at least) "pre-hearing confinement" and "administrative segregation." (*See id.*).

Plaintiff appealed this infraction. (*See* Doc. 6-1 at 5-6). On August 27, 2018, the Prisons Command B Deputy Director "affirmed" the infraction. (Compl. Ex. 13, Doc. 6-1 at 64, Disciplinary Hearing Appeal Decision dated 8/27/18). According to the Deputy Director, "[a] thorough investigation was completed, and individuals housed on [Plaintiff's] tier indicate[d] that

---

² Thus, it appears that Plaintiff "filed" or otherwise made *two* relevant complaints, both of which he refers to in his Complaint as "PREA complaints." The first complaint regards Majed's threat to Plaintiff and was made during the June 21, 2018 hearing. The second complaint regards Semp and was made in the June 22, 2018 kite or in another form that is either illegible or was not attached to the Complaint.

no remarks were made on the tier sharing information regarding PREA allegations, nor any other PREA related actions." (*Id.*).

On September 18, 2018, Plaintiff, acting *pro se*, initiated this action under 42 U.S.C. § 1983.[3] (Doc. 1). In his Complaint, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against all Defendants. (*Id.* ¶ 48).

Magistrate Judge Tsuchida reviewed Plaintiff's Complaint under 28 U.S.C. § 1915A, which requires a court to "review" a complaint "in which a prisoner seeks redress from a governmental entity or officer or employee[,]" and to dismiss "any portion of the complaint" if it fails to state a claim upon which relief may be granted or if it seeks monetary relief from a defendant who is immune from such relief. (*See* Doc. 7 at 1 (citing 28 U.S.C. §§ 1915A(a), (b)). In the R&R, Magistrate Judge Tsuchida recommends dismissing the entirety of Plaintiff's Complaint for failure to state a claim. (Doc. 7).

Plaintiff timely filed objections (Doc. 8), as well as a motion to amend his Complaint (*id.* at 11).

## II. LEGAL STANDARDS

When a party files objections to an R&R, the district court must review the Magistrate Judge's findings *de novo*. *United States v. Raddatz*, 447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. *Raddatz*, 447 U.S. at 673-74; *see also* 28 U.S.C. § 636(b)(1).

---

[3] On September 18, 2018, Plaintiff moved to proceed *in forma pauperis*. Doc. 1; Doc. 4. Magistrate Judge Tsuchida granted Plaintiff's motion (Doc. 5), and, on October 1, 2018, Plaintiff's Complaint was filed (Doc. 6).

5

To survive scrutiny under 28 U.S.C. § 1915A, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted); *see also Silva v. Di Vittorio,* 658 F.3d 1090, 1101 (9th Cir.2011) (courts "may only dismiss a *pro se* complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

### III. ANALYSIS

Plaintiff, in his Objections, primarily takes issue with the R&R's characterization of his claims. *See* Doc. 8 (citing Doc. 7).

Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that the gravamen of Plaintiff's Complaint is that Defendant Semp violated Plaintiff's right to confidentiality under the PREA; and that by infracting Plaintiff and otherwise mishandling his

grievances, all Defendants retaliated against Plaintiff for complaining about Majed and/or Semp. *See generally* Doc. 6.[4] The Court addresses each of Plaintiff's claims in turn.

### A. Plaintiff's PREA Claims

Plaintiff claims that by loudly stating "[s]o, you said Majed tried to rape you … ," Defendant Semp negligently or intentionally violated Plaintiff's rights under the PREA. *See* Compl. ¶¶ 11-12, 37.

Even assuming that Semp's conduct violated the PREA, a private right of action "to enforce federal law must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). Similarly, to state a cognizable claim under 42 U.S.C. § 1983, "a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), *holding modified by Harz v. Borough of Spring Lake*, 234 N.J. 317 (2018) (emphasis in original). The PREA "'authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission,' but there is nothing in the PREA to indicate that it created a private right of action, [or that it is otherwise] enforceable under § 1983." *Watkins v. Tuolumne County Jail*, 2019 WL 95508, at *3 (E.D. Cal. Jan. 3, 2019) (quoting 42 U.S.C. §§ 15601-15609); *see also Hatcher v. Harrington*, 2015 WL 474313, at *4-5 (D. Haw. Feb. 5, 2015) (citing cases).

---

[4] The "Legal Claims" section of Plaintiff's Complaint is void of specific, enumerated, titled counts. *See* Compl., Doc. 6 at 20. At times in his Complaint, Plaintiff maintains that Defendants "acted with deliberated indifference to the Plaintiff's safety concerns[,]" in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *See*, *e.g.*, *id*. ¶¶ 37, 44, 45. It is clear from the remainder of Plaintiff's briefing, however, that his claims against Defendant Semp are limited to those involving the PREA; and that his claims against Defendants Henderling, Ewing, and Jackson are limited to those of retaliation under the First Amendment. *See generally id*.; *Compare* Pl's. Aff., Doc. 6-1 at 4-9 (discussing Defendants' allegedly retaliatory conduct) *with Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious … [and the] prison official must have a sufficiently culpable state of mind … one of 'deliberate indifference' to inmate health or safety") (internal quotations and alterations omitted). In any event, in these portions of his Complaint, Plaintiff does not allege anything more than that the Defendants acted with "deliberate indifference." *See* Doc. 6; Doc. 6-1. Accordingly, to the extent that Plaintiff does, in fact, raise Eighth Amendment claims, those claims are dismissed. *See* Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Plaintiff's PREA claims are dismissed as a matter of law for failure to state a claim upon which relief can be granted. *See, e.g.*, *Blessing*, 520 U.S. at 340; *Watkins*, 2019 WL 95508, at *3; *Hatcher*, 2015 WL 474313, at *4-5; *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (as amended) (a complaint fails to state a claim if it lacks a cognizable legal theory).

### B. Plaintiff's Retaliation Claims

Plaintiff maintains that Defendants retaliated against him for complaining about Majed and/or Semp or for availing himself of the PREA reporting system. *See generally* Doc. 6. Specifically, Plaintiff maintains that Defendant Semp made his comment in retaliation for Plaintiff's having complained about inmate Majed; and that the remaining Defendants sanctioned, infracted, or otherwise mishandled Plaintiff's grievances in retaliation for Plaintiff's having complained about Defendant Semp and/or for Plaintiff's having "us[ed] the PREA reporting program." *See id.* ¶¶ 11, 12, 37, 44-47.

To state a cognizable claim of retaliation, a prisoner-plaintiff must allege that the state actor-defendant took some adverse action against the plaintiff because the plaintiff engaged in conduct protected under the First Amendment; that the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities;" and that the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The filing of an inmate grievance, including a complaint made under the PREA, is protected conduct. *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (discussing inmate grievances generally); *Payment v. Roiko*, 2015 WL 4724626, at *5 (W.D. Wash. Aug. 10, 2015) (discussing PREA complaints).

As against Defendant Semp, Plaintiff maintains only that Semp made his comment ("so, you said Majed tried to rape you") in retaliation for Plaintiff having just reported under the PREA inmate Majed's threat. *See* Compl. ¶¶ 11-12, 37; Objs., Doc. 8 at 4.[5]

Plaintiff's sole, conclusory allegation is insufficient to maintain a claim against Defendant Semp. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In any event, Semp's isolated comment does not rise to the level of adverse action. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (adverse actions are those that "would chill or silence a person of ordinary firmness from future First Amendment activities") (internal quotations omitted). Indeed, in his briefing, Plaintiff all but brushes off Semp's comment by referring to it as "stupid," and by alleging that the only harm to Plaintiff following the comment was having his tier mates laugh. *See* Compl. ¶¶ 11-12; *Cf. Howard v. Foster*, 208 F. Supp. 3d 1152, 1159 (D. Nev. 2016) (prisoner-plaintiff's assertions that false charges were filed against him and that he was punished and lost gym time constituted adverse action). Accordingly, Plaintiff's claim against Defendant Semp is dismissed. *See Brodheim*, 584 F.3d at 1270; *Rhodes,* 408 F.3d at 567-68; *see also Balistreri*, 901 F.2d at 699 (a complaint fails to state a claim if it provides insufficient facts under a cognizable legal theory).

Plaintiff's allegations against Defendant Ewing are harder to decipher. *See, e.g.*, Compl. ¶¶ 27-29, 37, 46. In his Complaint—and in addition to the six-day time-served in segregation sanction detailed above—Plaintiff lists five sanctions that Defendant Ewing "maliciously"

---

[5] The R&R construes Plaintiff's allegations against Defendant Semp to be: Semp made his comment in retaliation for Plaintiff having filed a grievance about Semp. *See* Doc. 7 at 4. Semp's comment, the R&R continues, was made on June 21; Plaintiff's grievance about the comment was made on June 22. *Id*. "Retaliation," the R&R explains, involves a defendant who acts against a prisoner in response to a prisoner's exercise of a right, *i.e.*, **after** a prisoner exercises his first amendment rights[.]" *Id*. (emphasis in original). Thus, the R&R recommends dismissing Plaintiff's retaliation claim against Defendant Semp. *Id*. In his Objections, however, Plaintiff clarifies that his allegation is that Semp made his comment in retaliation for Plaintiff having filed a PREA complaint against Majed. *See* Doc. 8 at 4; *see also* Compl. ¶¶ 11-12, 37.

imposed. *Id.* ¶ 29. According to Plaintiff, Exhibit 10 of his Complaint provides "a copy of the[se] sanctions[.]" *Id.* Exhibit 10 does indeed include "Sanction Notification" forms; but the forms appear to have been signed *only* by "C/O G Beecroft," who is not named or otherwise referenced in the Complaint. *Compare* Ex. 10, Doc. 6-1 at 53-56 *with* Compl., Doc. 6. In addition, it is unclear from these forms, and from Plaintiff's briefing, the relevance of these sanctions. *See* Ex. 10, Doc. 6-1 at 53-56 (stating *only* that Plaintiff has been "found guilty of rule violation(s) 549"); *Cf.* Compl. ¶ 27 ("Defendant Ewing [] has a history of failing to consider evidence that demonstrates [] Plaintiff's innocence"). In the absence of further allegations, the Court finds that Plaintiff has failed to allege a retaliation claim against Defendant Ewing,[6] and, therefore, Plaintiff's claim against Defendant Ewing is dismissed. *See Brodheim*, 584 F.3d at 1270; *Rhodes,* 408 F.3d at 567-68; *see also Balistreri*, 901 F.2d at 699.

As against Defendants Henderling and Jackson, Plaintiff asserts that they imposed the July 31, 2018 sanction in retaliation for Plaintiff (a) having complained about Defendant Semp's comment and/or (b) having availed himself of the PREA reporting system. *See* Compl. ¶¶ 18-23. In so doing, Plaintiff (correctly) points out that in her Infraction Report, Defendant Henderling states that Semp made his alleged comment on June 25, 2018 when, in fact, if Semp made his comment, it would have been on June 21, 2018. *Id.* ¶ 23 (citing Ex. 4, Doc. 6-1 at 15). Such a

---

[6] As explained above, Exhibit 2 demonstrates that, following the hearing on June 21, 2018, Defendant Ewing sanctioned Plaintiff to the six days he had just spent in segregation. Doc. 6-1 at 11. Thus, Plaintiff's sentence under the sanction for "threaten[ing] and attempt[ing] to intimidate" Majed *preceded* the hearing on the matter. *See id.* In his Complaint, however, Plaintiff does not appear to allege that *this* sanction was imposed in retaliation for any of Plaintiff's conduct, let alone his protected conduct of having just reported, under the PREA, Majed's threat. *See generally* Doc. 6; Doc. 6-1. To the extent that Plaintiff, in his Complaint, does, in fact, bring a procedural due process claim against Defendant Ewing (or any other Defendant), the Court finds that Plaintiff has failed to sufficiently allege facts supporting his claim. *See* Doc. 7 at 3; *Compare* Doc. 6 and Doc. 6-1 *with Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (prisoners' interests under the Due Process Clause are "generally limited to freedom from restraint, which, while not exceeding the sentence in [] an unexpected manner, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") (internal citations and alterations omitted).

mistake is important, Plaintiff maintains, because the MCC investigator asked the other inmates on Plaintiff's tier whether, *on June 25, 2018*, they overheard any remarks "sharing information regarding PREA allegations []or any other PREA related actions." *See* Doc. 6-1 at 15; Doc. 6-1 at 64. Given that they had access to Plaintiff's files, Plaintiff continues, both Defendants Henderling and Jackson should have known, and then corrected, this mistake; and, therefore, that they should not have infracted him. Compl. ¶ ¶ 22-23.[7] When Plaintiff grieved this infraction, Plaintiff continues, Defendant Henderling "warn[ed]" Plaintiff that he should not file any more grievances. *See id.* (citing Doc. 9 at 16).

Plaintiff's allegations against Defendants Henderling and Jackson fall short. Defendants Henderling and Jackson did indeed infract Plaintiff specifically because, broadly speaking, he was engaging in the protected conduct of complaining about Defendant Semp. However, they did so after engaging in an investigation, albeit a flawed one, and concluding that Semp did not make the comment that Plaintiff complained of. *See* Doc. 6-1 at 15. In addition, Defendants Henderling and Jackson infracted Plaintiff pursuant to a DOC policy that prohibits "providing false or misleading information during any stage of an investigation of sexual misconduct[.]" *Id.* (citing "WAC 549"). Thus, Plaintiff did not—and indeed could not—allege that the infraction "did not reasonably advance a legitimate correctional goal." *Rhodes,* 408 F.3d at 568; *see Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.1995) (the plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains").

The Court agrees with Plaintiff that Defendant Henderling's response to Plaintiff's grievance regarding this infraction ("[w]ho cares, no one cares, mistakes happen, get over it. I'm

---

[7] In any event, Plaintiff continues, according to her Report, Defendant Henderling infracted Plaintiff for providing the "false" allegation that Defendant Semp "discouraged" Plaintiff "from filing a PREA complaint" against Majed. Compl. ¶ 23. This allegation, Plaintiff maintains, is not "false" because Plaintiff "truly believed that Defendant Semp … was trying to discourage Plaintiff from pursuing the PREA complaint against offender Majed." *Id*.

11

warning you, no more grievances") was less than tactful. *See* Doc. 9 at 16. However, Henderling's response was on or about August 10, 2018. *See id.* Just three weeks earlier, in response to another of Plaintiff's grievances concerning the PREA investigation and his infraction, Henderling responded that Plaintiff "had a case regarding Majed. This case is closed. You now have a case regarding Lt. Semp, still opened." Kite Response, 7/16/18, Doc. 6-1 at 18. Two days later, in response to a new grievance concerning the same matter, Defendant Henderling provided Plaintiff the three relevant investigation numbers. *See* Kite Response, 7/18/18. Doc. 6-1 at 19. Twelve days after that, and in response to another new grievance about the same matter, Defendant Henderling informed Plaintiff that "[t]here is an open case regarding Lt. Semp[.]" *Id.* Having put the August 10, 2018 response in this context, the Court cannot conclude that Defendant Henderling's "warning" had the requisite retaliatory intent. *See Rhodes*, 408 F.3d at 567-68; *see also Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (courts can discern retaliatory intent (or not) from a chronology of events). Thus, the Court finds that Plaintiff has failed to sufficiently allege retaliation claims against Defendants Henderling and Jackson, and, therefore, these claims are dismissed. *See Brodheim*, 584 F.3d at 1270; *Rhodes,* 408 F.3d at 567-68; *Aholelei*, 488 F.3d at 1147.

**C. Plaintiff's Motion to Amend**

Plaintiff has moved to amend his Complaint. Doc. 8 at 11. "Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (internal quotation and alterations omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (a court should dismiss without leave to amend only if it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim") (quoting *Gomez v. USAA Federal Savings Bank,* 171

F.3d 794 (2d Cir.1999)). Thus, the Court GRANTS IN PART Plaintiff's motion. Specifically, and for the reasons described above, Plaintiff may not reassert his PREA claims. Plaintiff may, however, otherwise amend his Complaint.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

(1) The Court ADOPTS the Report and Recommendation (Doc. 7);

(2) Plaintiff's PREA claims are DISMISSED WITH PREJUDICE;

(3) Plaintiff's retaliation claims are DISMISSED WITHOUT PREJUDICE;

(4) Plaintiff's motion to amend his complaint (Doc. 8 at 11) is GRANTED IN PART;

(5) Plaintiff shall file his Amended Complaint no later than January 31, 2019.

**IT IS SO ORDERED.**

DATED this 11th day of January, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE