UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEROME CEASAR ALVERTO,

                    Plaintiff,

        v.

MICHELLE HENDERLING, et al.

                    Defendants.

CASE NO. C18-1380 BJR-BAT

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is plaintiff's Amended Complaint, Dkt. 12, and a motion for summary judgment brought by the two remaining defendants Michelle Henderling and Richard Samp. Dkt. 37. The Court recommends that defendants' motion for summary judgment be granted and the case be dismissed with prejudice.

As noted in the report the Court filed on August 3, 2019, recommending denial of plaintiff's motion for summary judgment, dkt. 26, the case has an involved procedural history. This law suit started in September, 2018, when plaintiff, a Washington State Department of Corrections prisoner filed a complaint seeking 42 U.S.C. § 1983 relief. Dkt. 6. Plaintiff alleged defendants Michelle Henderline, Stephen Ewing, Richard Samp, and Eric Jackson made false statements that were used to support disciplinary action against him. As relief he sought dismissal of the disciplinary guilty findings and monetary damages. Pursuant to 28 U.S.C. §

1   1915A(a), the Court reviewed the complaint and recommended dismissing it for failure to state a

2   claim upon which relief may be granted, or that seek monetary relief from defendants who are

3   immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Dkt. 7.

4           On January 11, 2019, the assigned District Judge issued an Order dismissing with

5   prejudice plaintiff's PREA claims, dismissing without prejudice plaintiff's retaliation claims, and

6   granting plaintiff leave to file an amended complaint. Dkt. 11. On January 29, 2019, plaintiff

7   filed the amended complaint now before the Court. Dkt. 12. The amended complaint again

8   named as defendants Michelle Henderline, Stephen Ewing, Richard Samp, and Eric Jackson. *Id.*

9   It also added a new defendant Michelle Wood, the Associate Superintendent of plaintiff's prison.

10  *Id.* at 7. The amended complaint again was based upon a confrontation plaintiff had with Majed,

11  another inmate. The confrontation led to disciplinary hearings and the imposition of sanctions

12  against plaintiff. Plaintiff alleged the defendants imposed sanctions against him based upon false

13  information, and a poor investigation. In essence plaintiff alleged defendants should not have

14  sanctioned him, and the sanctions were imposed in retaliation to a PREA complaint plaintiff

15  made.

16          On March 28, 2019, the assigned District Judge entered an order dismissing with

17  prejudice plaintiff's retaliation claims against defendants Ewing, Woods and Jackson. Dkt. 16.

18  The District Judge also dismissed plaintiff's other miscellaneous constitutional claims and his

19  putative state law claims. *Id.*  However, the Court declined to dismiss plaintiff's retaliation

20  claims against defendants Samp and Henderling. *Id.*  In specific, the District Judge found

21  plaintiff's allegation Samp made a comment to plaintiff about Majed's action in an area in which

22  other inmates could hear stated a claim that was sufficient to withstand summary dismissal. The

23  District Judge also found plaintiff's claim Henderling retaliated against him by disciplining him

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 2

1    based upon fabricated evidence and by responding to plaintiff's complaints about this by stating

2    "Who cares, No one care. Mistakes happen Get over it. I'm warning you no more grievances."

3    Accordingly, the sole defendants before the Court are Samp and Henderling and the sole claims

4    against them is for retaliation as described above.

**DISCUSSION**

6    **A.      Legal Standards**

7            The Court shall grant summary judgment if the movant shows that there is no genuine

8    dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R.

9    Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence

10   of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

11   1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce

12   any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

13   absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato*

14   *Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local

15   rules in opposing a motion for summary judgment does not relieve the moving party of its

16   affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v.*

17   *Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

18           "If the moving party shows the absence of a genuine issue of material fact, the non-

19   moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

20   issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex*

21   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere

22   allegations or denials in the pleadings but must set forth specific facts showing that there exists a

23   genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A plaintiff

1  must "produce at least some significant probative evidence tending to support" the allegations in

2  the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

3       Thus if the movant satisfies its initial burden, the nonmoving party must go beyond the

4  allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

5  evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929

6  (9th Cir. 2009) (emphasis omitted).

7       "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.*; *see*

8  *also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When

9  the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply

10  show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where

11  the record taken as a whole could not lead a rational trier of fact to find for the non-moving

12  party, there is no 'genuine issue for trial.'" *Id.*  at 587.

13       In resolving a summary judgment motion, "the court does not make credibility

14  determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless Inc.*, 509 F.3d 978,

15  984 (9th Cir. 2007).  Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all

16  justifiable inferences are to be drawn in [its] favor." *Anderson,* 477 U.S. at 255. Inferences,

17  however, are not drawn out of the air; the nonmoving party must produce a factual predicate

18  from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602

19  F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

20       Factual disputes whose resolution would not affect the outcome of the suit are irrelevant

21  to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248.  In other

22  words, "summary judgment should be granted where the nonmoving party fails to offer evidence

23

1   from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square*

2   *D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

3          The Court applies these standards in addressing defendants' motion for summary

4   judgment regarding plaintiff's retaliation claim.  Within the prison context, a retaliation claim

5   consists of: (1) An assertion that a state actor took some adverse action against an inmate (2)

6   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

7   exercise of [her] First Amendment rights, and (5) the action did not reasonably advance a

8   legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote

9   omitted).

10          Defendants' argue summary judgment should be granted because there is no evidence

11   showing retaliatory intent. *See e.g.* Dkt. 44 (Reply). Because direct evidence of retaliatory intent

12   rarely can be pleaded in a complaint, providing a chronology of events from which retaliation

13   can be inferred is sufficient to survive dismissal. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th

14   Cir.1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

15   **B.      Defendants' Summary Judgment Motion**

16          On October 16, 2019, defendants Samp and Henderling filed a motion for summary

17   judgment, declarations and exhibits in support, and a *Rand* notice of dispositive motion. Dkts.

18   37, 38, 39. Defendants contend Samp was assigned to investigate a PREA complaint plaintiff

19   made against another inmate in which he had an altercation. Dkt. 37 at 2. On June 21, 2018,

20   Samp went to plaintiff's unit and attempted to discuss the complaint with plaintiff confidentially.

21   *Id.* Plaintiff alleges Samp "loudly said on the tier to Alverto 'so you said Majed tried to rape

22   you?" *Id.*

23

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 5

1    Plaintiff consequently made a PREA complaint against Samp, which was investigated by

2   Captain McNeese. Captain McNeese interviewed multiple witnesses including other officers,

3   inmates housed near plaintiff and plaintiff. The officers and inmates supported Samp and not

4   plaintiff's version of events. During the investigation and at the infraction hearing that followed,

5   plaintiff did not allege that Samp made statements that made plaintiff afraid for his wellbeing. *Id.*

6   Rather, plaintiff told Captain McNeese that Samp's statement led to teasing by inmates and also

7   described Samp's statement as stupid. In his disciplinary hearing appeal, plaint also denied ever

8   being discouraged from pursuing his PREA complaint. However, after plaintiff was advised by

9   the Court his claim may be dismissed based upon the failure to allege adverse action, plaintiff

10  then claimed Samp made statements that exposed him to danger. *Id.* at 2-3.

11    Defendant Henderling was the PREA coordinator at the time of the incidents alleged by

12  plaintiff. She contends she was not involved in the investigation performed by Captain McNeese

13  who was appointed by the Superintendent to conduct the inquiry.  *Id.* at 3. After Captain

14  McNeese completed the investigation, the Superintendent determined plaintiff should be

15  infracted for making a false report. The Superintendent instructed Henderling to write up the

16  infraction pursuant to the usual practice at the prison. While Henderling mistakenly dated the

17  infraction as occurring on the 25th of July 2018, the hearing officer who conducted the hearing

18  and found plaintiff had made a false report had the correct date of the false report: June 21, 2018.

19  **C.    Plaintiff's Responses**

20    **P**laintiff filed a series of responses to the summary judgment motion. *See* Dkts. 40, and

21  41. Plaintiff also filed a notice stating "This Court should be using Dkt. 40, instead of Dkt. 41.

22  *See* Dkt. 42. Plaintiff argues the Court should deny the motion because the information in the

23  motion is "false." Dkt. 40 at 1. Regarding defendant Samp, plaintiff acknowledges he made a

PREA complaint against an inmate he had been in an altercation with, and Samp approached

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 6

1   plaintiff on June 21, 2018 to discuss the complaint. *Id*. at 2. However, plaintiff disagrees Samp

2   attempted to discuss the matter confidentially. Rather plaintiff alleges Samp "yelled on the tier so

3   you were raped by offender Magjed . . ." *Id.* Exhibit 1. Plaintiff argues the inmate witnesses at

4   his infraction hearing "merely said they did not hear anything." *Id.* at 4. Plaintiff contends this

5   does not rebut his claim Samp made the claimed comment and thus there is a dispute of material

6   fact.

7        Turning to defendant Henderling, plaintiff "disputes that defendant Henderling had no

8   involvement with the investigation," or that the infraction hearing officer received "information

9   about the correct date the incident [between plaintiff and Samp] occurred. *Id.* at 3. Plaintiff

10  contends "the fact Defendant Henderling wrote the infraction, itself, shows participation." *Id.* at

11  6.

12  **D.    Analysis**

13       This case is marked by each side alleging the other side has presented false information.

14  In response to plaintiff's earlier filed motion for summary judgment, defendants argued the

15  motion should be denied because plaintiff's allegations are "false." Dkt. 28 at 2. Defendant Samp

16  declared he did not engage in the behavior alleged by plaintiff. Dkt. 29. Defendant Henderling

17  declared she did not engage in the behavior alleged and that plaintiff's claim she stated in a

18  "kite," "Who cares, No one care. Mistakes happen Get over it. I'm warning you no more

19  grievances" is false because the kite is a forgery. Dkt. 30. Similarly, in response to defendants'

20  motion for summary judgment, plaintiff contends the information presented by defendants is

21  "false."

22       In contrast to the arguments raised as to plaintiff's motion for summary judgment,

23  defendants' motion for summary judgment contains additional factual assertions. Here,

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 7

1  defendant Samp submitted affirmative evidence in support of his claim he did not make

2  statements on the tier about rape in a manner that allowed other inmates to hear. Samp attached

3  as Exhibit 2 (Dkt. 38) the investigation assignment in which the Superintendent designated

4  Captain McNeese to investigate plaintiff's allegation that on June 21, 2018, Samp

5  inappropriately discussed a PREA matter with plaintiff and "yelled 'so you were raped by

6  offender [  ] or something to that effect."

7         In Captain McNeese's investigation report, the captain noted he spoke with plaintiff who

8  stated Samp did not yell "but his voice was loud enough for everyone to hear." Dkt. 38, Exhibit

9  3. McNeese also interviewed Officer Alvis who stated he heard Samp saying to plaintiff "he

10 couldn't be specific on the tier because it was confidential and would like to speak with him

11 [plaintiff] privately." *Id.*  McNeese also interviewed Officer Aboud who recalled Samp coming

12 into the unit and that Samp did not raise his voice. McNeese interviewed two inmates who were

13 also present. One inmate stated "I never heard anyone talking about Rape on the tier. I didn't

14 hear anyone talking about it. I would feel comfortable telling if I did hear, I would tell."  *Id.* The

15 other inmate was asked "did you hear Alverto or Samp talk about a PREA allegation?" The

16 inmate responded "I only heard Alverto talking to 9 house about how to file law suits. Staff

17 didn't talk about private stuff on the tier." *Id.*

18        Captain McNeese also interviewed Samp who stated he went to plaintiff's unit in

19 response to his PREA allegation. Samp said he introduced himself and before he could say why

20 he was there plaintiff stated "pull me out."  *Id*. at Exhibit 3. Samp turned to see if there were

21 officers to arrange an escort and plaintiff then said "forget it I can see you are not interested." *Id.*

22 Samp states as he was speaking very quietly to plaintiff that PREA allegations are taken

23 seriously plaintiff began yelling "do you heat what Lieutenant Richard Samp is saying?" *Id.*

1    Several offenders then yelled "no." Samp states he did not discuss the "sensitive nature of his

2    allegation within hearing of other offenders."

3        In the Investigator Finding Sheet submitted to the superintendent, Captain McNeese

4    concluded "witnesses support these allegations [by plaintiff] did not happen."  Captain McNeese

5    stated "offender should be infracted." *Id.* at Exhibit 4.

6        Defendant Henderling also submitted affirmative evidence in support of her claim she did

7    not investigate plaintiff's allegations against Samp, was not the hearing officer who conducted

8    the disciplinary hearing, and was not the official who found plaintiff's allegations against Samp

9    were false, and that plaintiff should therefore be disciplined and infracted. As noted above,

10   defendant submitted evidence that the Superintendent directed Captain McNeese to investigate

11   plaintiff's claim. Captain McNeese performed an investigation and based upon interviews of a

12   number of witnesses concluded plaintiff's claim that Samp made statements on the tier in

13   retaliation to plaintiff's PREA claim was untrue. The hearing officer who conducted plaintiff's

14   disciplinary hearing was Mr. Ewing, not defendant Henderling. Mr. Ewing found plaintiff

15   "guilty" of the infraction and imposed sanctions against plaintiff. Dkt. 38 Exhibit 5 at 32.

16   Defendant Henderling submitted this evidence to show plaintiff's claim she retaliated against

17   plaintiff by disciplining him based upon fabricated evidence is simply not true. To the contrary,

18   the evidence shows defendant Henderling did not investigate or gather the evidence used in

19   plaintiff's disciplinary hearing and did not conduct the hearing or impose sanctions after plaintiff

20   was found guilty.

21        Defendant Henderling does acknowledge that she made a mistake in stating

22   Superintendent Jackson gave pre-approval to infract plaintiff based upon the superintendent's

23   review of the investigation Captain McNeese performed regarding plaintiff's allegation that on

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

1    **June 25, 2018** Samp made improper statement about his PREA claim. Dkt. 38, Exhibit 4 at 22.

2    But the investigation performed by McNeese was not led astray by the error Henderling made

3    **after** Captain McNeese completed the investigation. The investigative reports and findings that

4    Captain McNeese prepared all establish Captain McNeese knew plaintiff alleged Samp acted

5    improperly on June 21, 2018. There is thus nothing showing Captain McNeese, the disciplinary

6    hearing officer Mr. Ewing, or the superintendent were misled about the date plaintiff alleged

7    Samp acted improperly.

8        Further there is nothing showing Henderling retaliated against plaintiff by disciplining

9    plaintiff based upon fabricated evidence. This is plain to see because Captain McNeese, not

10    Henderling, gathered the evidence; the Superintendent, not Henderling adopted Captain

11    McNeese's findings that plaintiff made false allegations, and Mr. Ewing not Henderling

12    conducted the disciplinary hearing finding plaintiff guilty and subject to sanctions

13        The record thus establishes defendants Samp and Henderling, have satisfied their initial

14    burden in making a motion for summary judgment. In order for plaintiff to survive summary

15    judgment plaintiff must therefore show a genuine issue of material fact by presenting affirmative

16    evidence from which a jury could find in his favor. *F.T.C. v. Stefanchik*, 559 F.3d at 929. As

17    noted above a non-movant's bald assertions or a mere scintilla of evidence in his favor are both

18    insufficient to withstand summary judgment.  Here, plaintiff argues his claim Samp made

19    improper statements on the tier creates a dispute of material dispute. But this claim is a bald

20    assertion. Plaintiff presents no additional evidence to support it. In contrast, defendant has

21    presented the statements of numerous individuals who did not hear Samp make the alleged

22    statements on the tier. While the Court normally believes the evidence of the nonmoving party is

23    to be believed, and all justifiable inferences are to be drawn in plaintiff's favor, the Court cannot

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 10

1   do so out of thin air. Rather plaintiff must provide a factual predicate from which the inference

2   may reasonably be drawn. Here other than plaintiff's unsupported claim, there are no facts upon

3   which the Court can reasonably infer Samp made the statements alleged. Summary judgment

4   should therefore be granted as to defendant Samp because plaintiff has not presented evidence

5   "such that a reasonable jury could return a verdict" in favor of plaintiff. *Anderson v. Liberty*

6   *Lobby, Inc.* 477 U.S. at 248.

7          Likewise summary judgment should be granted in favor of defendant Henderling.

8   Plaintiff's allegation that Hengerling retaliated against him by using false information to

9   discipline him is unfounded. The evidence as discussed above shows Henderling did not

10  investigate plaintiff, did not gather the evidence against him, did not make the findings against

11  him and was not the person who ultimately imposed the sanctions against plaintiff. Plaintiff's

12  allegation Henderling was involved in presenting false evidence for the purpose of improperly

13  sanctioning him in a retaliatory manner fails. The Court accordingly recommends defendants'

14  motion for summary judgment be granted and the case be dismissed with prejudice.

15                              **OBJECTIONS AND APPEAL**

16         This Report and Recommendation is not an appealable order. Plaintiff should therefore

17  not file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the

18  assigned District Judge enters a judgment in the case. Any party however may file objections to

19  this report and recommendation. Objections, if any, must be filed no later than **November 22,**

20  **2019.** If no objections are filed, the Clerk should note the matter for **November 29, 2019**, as

21  ready for the District Judge's consideration.

22         If objections are filed, any response is due within 14 days after being served with the

23  objections.  A party filing an objection must note the matter for the Court's consideration 14

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 11

1   days from the date the objection is filed and served.  The matter will then be ready for the

2   Court's consideration on the date the response is due. Objections and responses shall not exceed

3   eight pages.  The failure to timely object may affect the right to appeal.

4          DATED this 8th day of November, 2019.

5

6                                    _____

                                     BRIAN A. TSUCHIDA
7                                    Chief United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 12